# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE NATIONAL APARTMENT ASSOCIATION, DARBY DEVELOPMENT COMPANY, INC., GWR MANAGEMENT, LLC, MCLEAN INVESTMENTS, LLC, SHANDER INTERNATIONAL, LLC, <br><br>Plaintiffs, <br><br>v. <br><br>THE UNITED STATES OF AMERICA, <br><br>Defendant. | Case Number  21-1621 L <br><br>**COMPLAINT** |

Plaintiffs ("Plaintiffs"), by and through their undersigned counsel, bring this Complaint against the United States of America ("Government"), and in support state and allege as follows:

## I.   NATURE OF THE ACTION

1. On September 4, 2020, the Centers for Disease Control and Prevention ("CDC"), a Government agency, issued a nationwide order entitled "Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19" (the "CDC Order").  The CDC Order effectively prohibits property owners from evicting tenants of residential rental properties who are delinquent or in default on their rent payments, contrary to the property owners' legal, contractual, and constitutional property and other rights.  The CDC Order has been extended multiple times and will be effective by its terms until at least July 31, 2021.  The CDC Order has subjected property owners nationwide, over their objection, to an extended Government-authorized physical invasion, occupation, or appropriation of their private property by third parties without compensation.

2. Under settled constitutional law, the right to exclude is a fundamental element of property rights and falls within the category of interests that the Government cannot take without

just compensation. As a result of the CDC Order and their consequent inability to exercise their constitutional property rights and contractual rights, property owners in the United States have suffered enormous economic consequences. Without limitation, while continuing to incur all costs of ownership, they have been unable to evict non-rent-paying tenants from rental units and to generate income by leasing those units to rent-paying tenants. The CDC Order has appropriated the owners' right to exclude. Estimated financial losses industry wide amount to tens of billions of dollars.

3. The CDC Order constitutes a compensable taking of Plaintiffs' property and property rights without just compensation, in violation of the Fifth Amendment of the United States Constitution. Specifically, the CDC Order constitutes a physical taking because it has effected a Government-authorized physical invasion, occupation, or appropriation of Plaintiffs' private property, for the Government itself or for third parties. The Constitution requires just compensation for the taking.

4. Alternatively, the CDC Order constitutes an illegal exaction because the CDC exceeded and contravened its statutory and regulatory authority and as a direct result exacted Plaintiffs' private property and property interests, for which Plaintiffs are entitled to recover.

5. Plaintiffs seek just compensation for the deprivation of their property rights and the value of the property taken or illegally exacted by the Government. This includes the amount of rental income Plaintiffs would have received in the absence of the physical occupation and taking or exaction of their property and property rights under and as a direct result of the CDC Order.

6. Plaintiffs recognize that there may be important public health reasons to prevent persons from being evicted from their homes during a global pandemic. This action does not address such public policy issues or challenge that the deprivations of private property at issue

were intended for public use. However, the law prevents the Government from placing the financial burden of effecting such a policy on private owners of rental property by taking or exacting their property without compensation.

## II.     JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action and venue is proper pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Takings Clause of the Fifth Amendment to the United States Constitution, which provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V.

## III.     PARTIES

8. Plaintiff National Apartment Association ("NAA") is a trade association for owners and managers of rental housing. It is comprised of 157 state and local affiliated apartment associations and over 82,600 members that collectively manage more than 9.7 million rental homes throughout the United States, as well as in Canada and the United Kingdom. NAA members own rental homes that would have generated rental income but for the deprivation of property and property rights imposed under the CDC Order at issue in this matter. NAA has representational, organizational, and associational standing on behalf of those thousands of its members who have been injured by and suffered monetary losses as a direct result of the CDC Order. Protecting the interests of NAA's members, including through legal action, is central to NAA's purpose. Participation by individual members of NAA is not necessary for determination of the claims alleged or the relief requested in this lawsuit. NAA also has standing because it has had to expend money and resources seeking to challenge the CDC Order on behalf of its members.

9. Plaintiffs Darby Development Company, Inc., GWR Management, LLC, McLean Investments, LLC, and Shander International, LLC (the "Rental Property Owners") are owners of

3

residential rental properties. As a direct result of the CDC Order, rental units in properties owned by the Rental Property Owners are being occupied over the Rental Property Owners' objections by individuals who are not paying all rent due, and the Rental Property Owners are prevented by the CDC Order from evicting these individuals and re-leasing the rental units to rent-paying tenants, to the Rental Property Owners' considerable detriment. More specifically:

(1)     Darby Development Company, Inc. is an owner and manager of apartments and/or other residential rental properties based in South Carolina. Without limitation, its properties include approximately 100 units in North Carolina and 1,483 units in South Carolina. As set forth herein, the CDC Order has prevented it from evicting many non-rent paying individuals, without just compensation.

(2)     GWR Management, LLC is an owner and manager of apartments and/or other residential rental properties based in Texas. Without limitation, its properties include approximately 802 units in Alabama, 224 units in Georgia, 224 units in North Carolina, 186 units in South Carolina, and 4,666 units in Texas. As set forth herein, the CDC Order has prevented it from evicting many non-rent paying individuals, without just compensation.

(3)     McLean Investments, LLC is an owner of apartments and/or other residential rental properties based in Texas. Without limitation, its properties include approximately 72 units in Texas. As set forth herein, the CDC Order has prevented it from evicting many non-rent paying individuals, without just compensation.

(4)     Shander International, LLC (dba Tiffany Place Apartments) is an owner of apartments and/or other residential rental properties based in Nevada. Without limitation, its properties include approximately 182 units in Nevada. As set forth herein, the CDC

Order has prevented it from evicting many non-rent paying individuals, without just compensation.

10. Each of the Rental Property owners has suffered financial losses as a direct result of the CDC Order due to the non-payment of due and owing rental payments by tenants who have invoked the protections of the CDC Order, and who would have been subject to eviction but for the CDC Order.

11. Defendant United States of America is the Government of the United States, organized under the Constitution of the United States, and includes without limitation the Centers for Disease Control and Prevention ("CDC"), which is a Government agency located within and is one of the major operating components of the U.S. Department of Health and Human Services, together with its agents acting at its direction.

## IV.   FACTUAL ALLEGATIONS

12. As part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), on March 27, 2020, Congress enacted a 120-day eviction moratorium that applied to certain types of rental properties that received federal assistance or were subject to federally-backed loans. *See* CARES Act § 4024. That moratorium expired on July 24, 2020. *Id.*

13. On September 1, 2020 – after the Congressional eviction moratorium under the CARES Act had expired – the CDC issued its CDC Order, which imposed a broad moratorium on residential evictions in the United States. The CDC Order, entitled "Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19," was published on September 4, 2020. 85 Fed. Reg. 55292, 55292 (Sept. 4, 2020). The CDC stated that it was issuing the CDC Order under Section 361 of the Public Health Service Act (42 U.S.C. § 264) and federal regulations codified at

42 C.F.R. § 70.2. *Id.* at 55293. In the CDC Order, the CDC noted the "historic threat to public health" presented by the COVID-19 pandemic, and explained its view that an eviction moratorium "can be an effective public health measure utilized to prevent the spread of communicable disease." *Id.* at 55292. Unlike the Congressional eviction moratorium under the CARES Act, the CDC Order, by its express terms, is not limited to federally-backed rental properties, but rather applies to essentially all residential rental properties nationwide. *Id.*

14. The CDC Order directs that "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of this Order." *Id.* at 55293.

15. The CDC Order defines "evict" to mean "any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property." *Id.* at 55293.

16. The CDC Order defines "residential property" to mean "any property leased for residential purposes, including any house, building, mobile home or land in a mobile home park, or similar dwelling leased for residential purposes, but shall not include any hotel, motel, or other guest house rented to a temporary guest or seasonal tenant as defined under the laws of the State, territorial, tribal, or local jurisdiction." *Id.*

17. The CDC Order defines "covered persons" as "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating that: (1) [t]he individual has used best efforts to obtain all available government assistance for rent or housing; (2) [t]he individual either (i) expects to earn no more than $99,000

in annual income for Calendar Year 2020 (or no more than $198,000 if filing a joint tax return), (ii) was not required to report any income in 2019 to the U.S. Internal Revenue Service, or (iii) received an Economic Impact Payment (stimulus check) pursuant to Section 2201 of the CARES Act; (3) the individual is unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses; (4) the individual is using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses; and (5) eviction would likely render the individual homeless—or force the individual to move into and live in close quarters in a new congregate or shared living setting—because the individual has no other available housing options." *Id*. A form of declaration was attached to the CDC Order.

18. Under the CDC Order, a covered person who supplies the form of declaration may not be "evicted or removed from where they are living" while the CDC Order is effective. *Id.* at 55292.

19. Although the CDC Order nominally pertains only to "covered persons" who supply the provided form of declaration, the criteria are broadly applicable and the protections of the CDC Order apply automatically to anyone who provides the declaration. There is no process under the CDC Order to challenge such a declaration. The requirement of a declaration and the nominal limitation of the CDC Order to "covered persons" are, therefore, largely meaningless.

20. Furthermore, the CDC Order imposes harsh penalties for violations of the CDC Order. Specifically, the CDC Order provides that "a person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or

both, or as otherwise provided by law" and that "[a]n organization violating this Order may be subject to a fine of no more than $200,000 per event if the violation does not result in a death or $500,000 per event if the violation results in a death or as otherwise provided by law." *Id.* at 55296.  The CDC Order further authorizes the U.S. Department of Justice to "initiate criminal proceedings as appropriate seeking imposition of these criminal penalties." *Id.*  These harsh civil and criminal penalties effectively compel property owners to accept the representations of tenants about qualifying under the CDC Order, even if apparently untruthful, to avoid the serious consequences that could result from pursuing an eviction that ultimately could be found to violate the CDC Order.

21. Additionally, the CDC Order specifies that the CDC Order "shall be enforced by Federal authorities and cooperating State and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18." *Id.* at 55296.

22. The CDC Order does not apply in any State, local, territorial, or tribal area with a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements in the CDC Order. *Id*. at 55292.  Although certain areas have enacted eviction moratoria, the CDC Order acts as a backstop to such moratoria.  The CDC Order bars home providers from evicting non-rent paying tenants in any event, so there is no incentive for governors, legislatures, courts, or local governments to suffer the political consequences of lifting state and local moratoria.  The CDC Order prohibits evictions in all locales, including all locales that never had any localized moratoria or that imposed them only temporarily.

23. As a result of these various factors, the CDC Order in practice prevents nearly all residential evictions of delinquent or non-rent paying tenants and thus precludes property owners from re-leasing housing to rent-paying persons.

24. The CDC Order contains no provision for compensating property owners for the losses they have sustained and continue to sustain as a result of their inability to evict delinquent and non-rent paying tenants who are occupying their property over their objection and to re-lease the housing to rent-paying persons.

25. While the CDC Order technically does not relieve tenants from their legal and contractual obligation to pay rent, as a practical matter landlords have little ability to recover past-due rent from delinquent or non-rent paying tenants. The right of eviction and related right to replace a tenant who is not current on all rent payments with a new rent-paying tenant is the principal mechanism for property owners to avoid economic losses resulting from a tenant's failure to pay rent, and the CDC Order prohibits property owners from exercising these fundamental rights.

26. The CDC Order became effective nationwide upon publication in the *Federal Register* on September 4, 2020. *See* 85 Fed. Reg. 55292, 55292 (Sept. 4, 2020).

27. The CDC Order initially was effective until December 31, 2020. *Id.* at 55297. The Government has extended the CDC Order, subject to minor modifications, several times. The Consolidated Appropriations Act extended the Order until January 32, 2021. Pub. L. No. 116-260, § 502, 134 Stat. 1182 (2020). The CDC then extended the CDC Order through March 31, 2021. 86 Fed. Reg. 8020 (Feb. 3, 2021). The CDC then again extended the CDC Order through June 30, 2021. 86 Fed. Reg. 16731 (Mar. 31, 2021). The CDC then again extended the CDC Order through July 31, 2021. 86 Fed. Reg. 34010 (June 28, 2021).

28. Since its effective date of September 4, 2020, the CDC Order has effectively precluded the eviction of all delinquent and non-rent paying tenants.

29.     The Government has not provided Plaintiffs with any compensation for the deprivation of property and rights set forth herein.

30.     The CDC Order acknowledges its economic significance to property owners. It notes that even a mere delay in its effective date would permit evictions "potentially on a mass scale." 85 Fed. Reg. 55292 at 55296. It also acknowledges that it would be considered a "major rule under the Congressional Review Act," *id.*, which means a rule with an annual effect on the economy of $100 million or more. 5 U.S.C. § 804. In fact, the actual industry-wide effect is tens of billions of dollars or more. The CDC Order acknowledges that without government intervention, 30-40 million people could be at risk of eviction. 85 Fed. Reg. 55292 at 55295. Industry analysts have publicly estimated that by the end of 2020 there were more than 10 million delinquent renters nationwide with estimated back-rent obligations of $57 billion.

31.     As a direct and proximate result of the CDC Order and the consequent taking and/or exaction of property without just compensation, Plaintiffs have suffered significant financial damage. The CDC Order compels property owners, over their objection, to permit delinquent and non-rent paying tenants to continue occupying rental properties without making full rent payments, while precluding property owners from excluding such persons and leasing the rental homes to rent-paying persons, even as the property owners must continue paying taxes, utility payments, employee salaries, maintenance costs, the cost of capital, and other expenses. The CDC order is a Government-authorized invasion, occupation, or appropriation of the property owners' property, contrary to their constitutional rights, and has resulted in a deprivation of property rights including the fundamental right to exclude as well as contract rights including the contractual and legal right of eviction.

## V. CLAIMS FOR RELIEF

### COUNT 1
### TAKING WITHOUT JUST COMPENSATION

32. Plaintiffs reallege and incorporate all allegations in the preceding paragraphs as though fully set forth herein.

33. The Takings Clause of the Fifth Amendment to the United States Constitution provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment protects property owners from, and requires just compensation for physical takings, whether permanent or temporary.

34. Plaintiffs have valid, protected, and legally cognizable property interests and property rights in the rental properties they own and in the leases and other contracts associated with those rental properties, including without limitation rights to exclude non-rent paying persons from their properties, to not permit the unwanted occupation of their properties, to recover possession of their property from unwanted occupation, to enforce their leases and contracts associated with their properties, and to lease such properties to rent-paying persons, including so that they can enjoy the full value of their property and to maintain a consistent stream of rent.

35. The CDC Order constitutes a taking of Plaintiffs' private property and property rights for public use without just compensation, in violation of the Fifth Amendment.

36. Specifically, the CDC Order constitutes a compensable physical taking because it has effected a Government-authorized physical invasion, occupation, or appropriation of Plaintiffs' private property, for the Government itself or for third parties.

37. The Constitution requires just compensation for the taking.

38. The Government has not provided just compensation for the taking of Plaintiffs' property and property rights.

39. Plaintiffs are entitled to full and just compensation for the Government's taking of their property and property rights, including the fair rental value of the property taken. Specifically and without limitation, Plaintiffs are entitled to recover from the Government as just compensation the amount of rental income Plaintiffs would have received had they been able to lease their property, which is currently occupied under the CDC Order and over their objection by delinquent or non-rent paying individuals, to rent-paying persons at reasonable fair market rents.

40. As a result of the Government's actions, Plaintiffs have actually, directly, and proximately been caused by the Government and have suffered harm, injury, and damages, and are entitled to recovery against the Government in an amount to be proven at trial.

## COUNT 2
## (IN THE ALTERNATIVE)
## ILLEGAL EXACTION

41. Plaintiffs reallege and incorporate all allegations in the preceding paragraphs as though fully set forth herein.

42. In the alternative, the CDC Order constitutes an illegal exaction because the CDC exceeded and contravened its statutory and regulatory authority under Section 361 of the Public Health Service Act (42 U.S.C. § 264). Numerous courts that have reviewed the legality of the CDC Order have concluded that it was unlawful. By, through, and as a direct result of the Government's illegal action or improper application of law, the Government has exacted Plaintiffs' private property and property interests. The CDC Order has enriched the Government at Plaintiffs' expense, directly or in effect, by illegally imposing costs and expenses on Plaintiffs that Plaintiffs should not have to bear and that the Government otherwise would bear, including without limitation the cost of housing delinquent or non-rent paying individuals. The Government's actions have had a direct and substantial impact on Plaintiffs and the exaction occurred as a direct result of the unlawful government action.

43. Plaintiffs are entitled to recover for the Government's exaction of their property and property rights. Specifically and without limitation, Plaintiffs are entitled to recover from the Government the amount of rental income Plaintiffs would have received had they been able to lease their property, which is currently occupied under the CDC Order and over their objection by delinquent or non-rent paying individuals, to rent-paying persons at reasonable fair market rents.

44. As a result of the Government's actions, Plaintiffs have actually, directly, and proximately been caused by the Government and have suffered harm, injury, and damages, and are entitled to recovery against the Government in an amount to be proven at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court issue judgment in their favor and grant them relief as follows:

A. Issue an Order finding, concluding, and adjudging that the Government is liable to Plaintiffs for the taking of Plaintiffs' private property for public use without just compensation, in violation of the Fifth Amendment (or, alternatively, for the illegal exaction of Plaintiffs' property);

B. Award Plaintiffs full and just compensation from the Government for the taking (or alternatively, the illegal exaction), including without limitation the amount of rental income Plaintiffs would have received in the absence of the CDC Order;

C. Award Plaintiffs pre-judgment and post-judgment interest as available under applicable law and at the maximum rate permitted by law;

D. Award Plaintiffs their attorneys' fees and costs as available under applicable law; and

E. Award such other and further relief as the Court deems proper and just.

Dated: July 27, 2021

Respectfully submitted,

/s/ Creighton R. Magid
Creighton R. Magid #4447867
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W.
Suite 900
Washington, D.C.  20005
Telephone:  (202) 442-3555
Fax:  (202) 442-3199
Magid.chip@dorsey.com

Shawn J. Larsen-Bright
DORSEY & WHITNEY LLP
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
Telephone: (206) 903-2417
Fax:  (206) 903-8820
larsen.bright.shawn@dorsey.com

John McDermott
JOHN MCDERMOTT, PLLC
4300 Wilson Blvd, Suite 400
Arlington, VA  22203
Telephone:  (703) 518-6141
JMcDermott@naahq.org

Attorneys for Plaintiffs